The automobile of defendant, A.G. McBride, collided with that of Hunter M. Patterson, in the intersection of Odom and East Cypress Streets in the City of Bastrop, Louisiana, on May 6, 1944, and Sally Ann Patterson, aged sixteen, who was riding with her mother in the latter car, suffered serious and disabling injuries from the impact. The parents of the injured girl, for her use and benefit, instituted this suit against McBride and his insurer, Globe Indemnity Company, to recover damages in the sum of Twenty Thousand ($20,000) Dollars. Specific injuries are alleged to be: "* * * a severe sprain of the sacroiliac joints, injury to the muscles, nerves and ligaments of her back, injury to the kidneys and ureter, and said impact knocked the sacrum and coccyx bone out of line with the spine," the resultant being that the girl: "has been rendered a nervous and physical wreck, "cannot sleep at night, suffers continuously with severe pains in her back, can take practically no part in school activities, although she was, prior to said accident, very active in such activities, cannot dance because the slightest exertion upsets her entire system, cannot take part in any games which require the slightest exertion, and, in short, her social and outdoor life has been wrecked and ruined."
For a cause of action against McBride he is charged with being negligent in the operation of his car in several respects at the time of and immediately prior to the accident.
Judgment was rendered in favor of plaintiffs for Two Thousand Five Hundred ($2500) Dollars and against the defendants in solido. Both sides appealed.
In this court, through counsel, defendants admit that the accident happened exclusively from McBride's negligence, and they submit that the only question involved and to be determined is the amount plaintiffs are entitled to recover as damages for their daughter's account. They urge that the amount should not exceed Seven Hundred Fifty ($750) Dollars. On the other hand, plaintiffs contend that the judgment should be increased to the full amount for which they sued.
When the accident occurred Sally Ann was riding on the front seat at her mother's right. The right side of her lower back was against the arm rest of the right door, while her left side rested against the back of the seat. Her left leg was doubled under her. The car was struck below the handle of the right door by the left hand portion of the front end of the McBride car. The impact was heavy as plaintiffs' car veered abruptly, ran over the curb, across the neutral ground and sidewalk and finally rested in the lawn of a residence adjacent to the street. The force of the blow against the door was instantaneously transmitted to the girl's lower right side and lower back.
It is conceded by defendants that plaintiffs' daughter was jolted severely and suffered shock, followed by some soreness of the muscles, joints, etc. of the lower portion *Page 919 
of her back, but beyond these experiences they deny that she was injured or damaged to any extent; and such injuries as she did sustain, it is strenuously argued, have healed.
Plaintiffs' contentions are reflected from the quoted portions of their petition. They argue that the resulting disability to their daughter is permanent.
To support their respective positions and contentions, each side introduced and relies upon the testimony and expert opinions of several doctors, each of whom has had many years experience and, so far as disclosed by the record, of equal credibility. If plaintiffs' experts are correct in their diagnoses of the girl's physical condition at time of trial, fourteen months after the accident, the judgment should be substantially increased, but, on the other hand, if defendants' experts are correct in their opinions, the judgment is possibly excessive.
We cannot conceive a case wherein the medical expert opinions could be more at variance and in sharper conflict than appears in this case. These opinions are irreconcilable. This, to express it mildly, is a regrettable situation, but not entirely new to this court. We are called upon to determine which, if either, of the two groups is correct. But, fortunately, the lay testimony is abundant and is free of serious conflict.
Neither Sally Ann nor her mother was knocked unconscious. Both got out of the car by their own power after it rested. The mother apparently was jolted and shocked worse than the girl. However, she was able to operate the car and drove it to her home.
The accident occurred on a Saturday. The first visible evidence to indicate that Sally Ann had been injured worse than was at first thought, was a blue spot about four inches in width that developed on the surface of the right hip. It was extant for two or three weeks. On Monday, after the accident, she was taken to the family physician, Dr. S.I. Sims. She then complained of severe pain in the lumbo-sacral region and right hip. She was nervous and still affected with shock. Dr. Sims ministered unto her regularly and saw and observed her many times after she first went to him for medical attention. On June 12th he had X-rays made of the portions of the body from whence the pain appeared to emanate, and also of the pelvis. Other pictures were thereafter made. None of the pictures revealed bone fractures. Dr. Sims testified that:
"* * * She had a sprain of all of these joints (the ilium, ischium and pubis), which was so severe that she may never regain any normal function. They are not true joints — they are held by ligaments and cartilage mostly and they were torn loose there; and they have never grown back. * * *"
It is shown that the X-ray will not disclose trauma of this character. Dr. Sims was of the belief that there was a fracture of the upper part of the sacrum; that the intervertebral disc between the fifth lumbar and the sacral region is ruptured; that possibly there was nerve impingement in the locus of this rupture, but such an injury, he says, will not be disclosed by X-ray. He found the muscles of the lower back rigid from the time he first examined the girl to the time of last examination. He also found her right hip to be higher than the left one, due to the collision, and the pelvis bone of the right side more prominent than the left one. He finally said that at date of trial the girl's condition was no better than when he first examined her.
Sally Ann's complaints of pain were so persistent that Dr. Sims recommended that she wear a sacroiliac support, which was done for quite a time without improvement, and then, at his suggestion, a special elastic garment was made for her, and worn by her. This was followed by curtailment of all usual and customary physical exercise.
Dr. Sims, out of an abundance of precaution, advised the parents to carry the girl to Dr. J.E. Walsworth, a prominent physician in the city of Monroe, for additional examination, and to procure his opinion touching her condition. This was done in August, 1944. Dr. Walsworth made a thorough examination of the girl and rendered a lengthy report thereon to *Page 920 
plaintiffs. Physical examination made by him and study of X-rays made at his suggestion, convinced him that Dr. Sims' diagnoses were correct and he confirmed them in all particulars. He also found traumatic retro-position of the uterus.
It was the opinion of Drs. Sims and Walsworth and also of the other doctors who testified on behalf of plaintiffs, that Sally Ann could never be a successful teacher, nurse or secretary because of the physical conditions they found to exist, which conditions, they all believe, will be permanent.
Sally Ann was also examined on June 19, 1945, by Dr. W.V. Garnier, who conducts a clinic in the City of Bastrop, and again a few days prior to trial. Dr. Garnier was assisted in examining and diagnosing her condition and ailments by Dr. Amoroso, who is attached to the clinic. Dr. Garnier found that the girl suffered from pain and tenderness over the lower portion of the back, rigidity of spinal muscles, some scoliosis (curvature of the spine) and retro-displacement of the uterus. This latter ailment, it was his opinion, was caused by the accident. The pain, he says, may be due to a ruptured disc aggravated by the displacement of the uterus. He also thinks there is trauma of some sort in the right sacro-iliac joint. He tersely expresses his opinion of the situation in these words, to-wit:
"* * * We can't exactly put our finger definitely upon what actually is wrong with this girl. We are within an area of three or four inches there in diameter, and we know there is a lot of trouble there and that it will exist the rest of her life."
Dr. Amoroso concurred in the diagnosis and conclusions reached by Dr. Garnier. Dr. Garnier stated also that it was probable, but not certain, that by two different operations the conditions he found could be alleviated and the disability and impairment removed.
Dr. J.N. Jones, who has done general practice since 1908, made physical examination of Sally Ann a few days prior to trial. He found, substantially, the same conditions as were found by Dr. Sims. He gave the following testimony that reflects his opinion, to-wit:
"Q. Is there any question in your mind about this child being injured? A. Sure. She is injured; anybody can see it on inspection.
"Q Would you hazard a guess as to how long, approximately, this condition will last? A. Possibly forever.
"Q. I believe you stated you examined her sometime in June? A. Yes, sir.
"Q. Now, assuming that this wreck occurred on May 6th, 1944, would that give you any ideas to how long it would last? A. Well, what makes me think it would last indefinitely is, you know the child has had time to have gotten well if she was going to."
Doctors who testified in behalf of the defendants were W.L. Bendel, J.Q. Graves, Henry E. Guerriero, D.M. Moore and W.L. Smith. The last two named specialize in roentgenology, X-ray diagnosis and treatment. They interpreted pictures they made of Sally Ann and those made by other doctors who testified in the case. All of these pictures were negative as to fractures of the bones in that part of the girl's body from whence came pain. The other three doctors, for whose ability and integrity we have the highest regard, engage in general practice and surgery. Their examinations of Sally Ann consumed not more than thirty Minutes each. Neither was able to find any clinical reason why the girl should be suffering pain. Each testified that her condition was that of a normal girl of her age and in their opinion she was not disabled to any extent. All of them concede that as pain is a subjective symptom they would not say that the complainant was falsifying in professing to suffer pain.
We have paraphrased at length the testimony and conclusions of Dr. Sims, because he is in the most favorable position from observation and contact to diagnose this case, and because all of the other prominent physicians, who testified on plaintiffs' behalf, concur unreservedly in his diagnoses and conclusions.
It is shown that prior to the accident Sally Ann engaged in all physical activities conducive to the health and development of a normal girl of her age, such as tennis, *Page 921 
dancing, bathing, skating, bicycling, etc. The lay testimony is to one accord that she cannot and does not now, save to a very limited extent, engage in any of these activities. Her school mates, teachers, dress maker and corsetier all gave testimony which conclusively establishes that since the accident this girl has been a different person to what she was prior thereto; that she tires easily, acts abnormally and in other respects her attitude toward life and things generally is materially different to what it formerly was.
For us to wholly uphold defendants' contentions we would have to disregard the testimony of the medical as well as the lay witnesses who testified on plaintiffs' behalf, and convict this young girl and her parents of a deliberate conspiracy to mulct McBride and his insurer of many thousands of dollars. Of course, under the testimony, we would not be warranted in doing this.
Physicians, as a rule, are not surprised but expect to see develop injuries and pain of the character complained of by this girl, from a blow of the kind and at the locus received by her.
Plaintiffs' case has been established beyond a mere preponderance of the evidence.
The more serious question for solution poses the probable or possible duration of the afflictions that now beset plaintiffs' daughter. The question is not destitute of difficulty. The trial judge was not certain that her condition would prove permanent. In written reasons for judgment he virtually held that notwithstanding the opinions of plaintiffs' doctors on this question, it is not certain she will go through life afflicted as she was at time of trial. The amount of the judgment is clearly indicative of this.
All things considered, particularly the age of Sally Ann, it is more than probable she will eventually recover entirely, or practically so, from the effects of her injuries. It is generally true that while back injuries are slow to heal, yet most of them do so completely.
In briefs, both sides refer us to decisions they believe support their contentions anent the question of quantum, and plaintiffs stress the reduced purchasing power of American money. It is true, as has been repeatedly said, that in tort actions prior decisions generally do not provide an accurate guide to follow in fixing the amount of damages. The facts of each case mainly determine this. Of course, uniformity, as nearly as possible is desirous.
We are of the opinion that the lower court was a bit too conservative in fixing the quantum in this case. An award of Three Thousand Five Hundred ($3,500) Dollars will more nearly, all things considered, meet the ends of justice. Therefore, for the reasons herein assigned, the judgment appealed from is amended by increasing the amount thereof to Three Thousand Five Hundred ($3,500) Dollars, and as thus amended, said judgment is affirmed with costs.